UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 06-23 |
| ISRAEL CALDWELL | SECTION "N" |

## **ORDER AND REASONS**

Before the Court is the Motion to Vacate, Set Aside, or Correct Sentence, filed pursuant to 28 U.S.C. § 2255, by Israel Caldwell (hereafter, "Caldwell"). The motion was filed on February 5, 2009; on or about April 3, 2009, the government filed an opposition to Caldwell's petition.

### I. **UNDERLYING FACTS**

On January 27, 2006, Caldwell was indicted for assault with a dangerous weapon with intent to do bodily harm within the territorial waters of the United States, in violation of 18 U.S.C. § 113(a)(3). Caldwell entered a plea of not guilty, and proceeded to trial on May 15, 2006, which resulted in a hung jury. The grand jury thereafter returned a one count superseding indictment which charged Caldwell with assault resulting in serious bodily injury in violation of 18 U.S.C. § 113(a)(6). Caldwell's trial began on July 10, 2006, and the jury returned a verdict of guilty.

1

On September 27, 2006, Caldwell was sentenced to a 90 month term of imprisonment, which was within the applicable guideline range, and ordered restitution in the amount of $57,451.32 (representing medical costs and lost wages resulting from Caldwell's stabbing of a fellow shipmate). Caldwell timely appealed his conviction to the Fifth Circuit Court of Appeals, raising two particular issues: (1) the denial by the district court to introduce post-stabbing work performance evaluations of the victim, Mr. Gheorghe Catana; and (2) the denial by the district court of a jury instruction with regard to self defense. The Fifth Circuit affirmed the conviction on December 10, 2007.

## II. THE APPLICATION FOR POST-CONVICTION RELIEF UNDER § 2255

In this application, Caldwell claims his constitutional rights were compromised as a result of ineffective assistance of counsel, in the following particular ways: (a) counsel failed to adequately secure a justification defense and jury instruction; (b) counsel denied and interfered with Caldwell's right to testify; and (c) counsel failed to file a motion for downward departure for aberrant behavior, conduct of the underlying victim, and acceptance of responsibility.

## III. LAW AND ANALYSIS

### A. Ineffective Assistance of Counsel

The Sixth Amendment guarantees the right to effective assistance of counsel in criminal prosecutions.[1] In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-prong test to evaluate ineffective assistance claims. To obtain reversal of a conviction under the *Strickland* standard, the defendant must prove that counsel's

---

[1] *See McMann v. Richardson*, 397 U.S. 759, 711 n.14 (1970) (6th Amendment right to counsel is right to effective assistance of counsel).

performance fell below an objective standard of reasonableness[2] and that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome in the proceeding.[3] A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other.[4] In deciding whether a counsel's performance was ineffective under *Strickland*, a court must consider the totality of the circumstances.[5]

Under the performance prong of *Strickland*, there is a "strong presumption"[6] that counsel's strategy and tactics fall "within the wide range of reasonable professional assistance."[7] Courts have declined to characterize counsel's performance as ineffective assistance when counsel

---

[2]*See Strickland*, 466 U.S. at 687-88; *Harris v. Day*, 226 F.3d 361, 364 (5th Cir. 2000) (judicial scrutiny of counsel's performance must be highly deferential, given "strong presumption" that counsel's conduct was reasonable professional conduct).

[3]*See Strickland*, 466 U.S. at 687; *see also Williams v. Taylor*, 529 U.S. 362, 396-99 (2000).

[4]*See* 466 U.S. at 697; *see*, *e.g.*, *Martin v. Cain*, 246 F.3d 471, 477 (5th Cir. 2001) (court need not address *Strickland*'s performance prong because defendant could not show prejudice).

[5]*See* 466 U.S. at 690 (court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of reasonable professional judgment"); *see also Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[T]he right to effective assistance of counsel. . . may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial.")

[6]In interpreting the prejudice prong, the Supreme Court has identified a narrow category of cases in which prejudice is presumed. *See Strickland*, 466 U.S. at 692 (1984). The presumption applies when there has been an "[a]ctual or constructive denial of the assistance of counsel altogether", when counsel is burdened by an actual conflict of interest, or when there are "various kinds of state interference with counsel's assistance." *See id; Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). In these situations, prejudice is so likely to occur that a case-by-case inquiry is unnecessary. The circumstances for presuming prejudice are not present herein. *See Strickland*, 466 U.S. at 692; *see also U.S. v. Cronic*, 466 U.S. 648, 658 (1984).

[7]*Strickland*, 466 U.S. 668, 689 (1984).

acted according to the defendant's restrictions on strategy,[8] when the defendant failed to provide counsel with complete and accurate information,[9] or when counsel refused to "assist[] the client in presenting false evidence or otherwise violating the law."[10] Since prejudice is not presumed, the defendant must show that counsel's errors were prejudicial and deprived defendant of a "fair trial, a trial whose result is reliable."[11] This burden generally is met by showing that the outcome of the proceeding would have been different but for counsel's errors.[12] However, in some cases, the court will inquire further to determine whether counsel's ineffective assistance "deprive[d] the defendant of a substantive or procedural right to which the law entitles him."

---

[8]*See, e.g.*, *Moore v. Johnson*, 194 F.3d 586, 607 (5th Cir. 1999) (counsel's purported failure to expend pretrial resources in an effort to unearth evidence that may have contradicted defendant's alibi defense was not ineffective assistance because defendant chose and insisted on alibi defense).

[9]*See e.g.*, *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997) (counsel's failure to avoid eliciting damaging testimony from defense witness was not ineffective assistance because defendant did not inform counsel he molested daughter).

[10]*Nix v. Whiteside*, 475 U.S. 157, 166, 171 (1986) (counsel provided effective assistance by preventing defendant from committing perjury).

[11]*Strickland*, 466 U.S. at 687. Unlike the performance prong of the *Strickland* test, which is analyzed at the time of trial, the prejudice prong of the *Strickland* test is examined under the law at the time the ineffective assistance claim is evaluated. *See Lockhart v. Fretwell*, 506 U.S. 364, 367-68 (1993).

[12]*See Williams v. Taylor*, 529 U.S. 362, 391-93 (2000). To prove prejudice, the defendant must establish a "reasonable probability" that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 692. The Court has rejected the proposition that the defendant must prove more likely than not that the outcome would have been altered. *See id.; see also Woodford v. Viscotti*, 537 U.S. 19, 22-23 (2002).

4

### B. Ground One: Counsel's Alleged Failure to Adequately Secure a Justification Defense and Jury Instruction

Caldwell claims that his counsel was ineffective because she (a) "failed to adequately investigate, research, and thereupon sufficiently argue for a justification defense and justification instruction on behalf of Petitioner Caldwell. Although counsel did motion the court for this justification defense, counsel neglected to investigate the circumstances of the victim's violent work history and characteristics as corroborated by the victim's employee valuations ..."; and (b) "neglected to adequately research the Fifth Circuit requirements for such a justification defense and justification instruction prior to moving the trial court for such an instruction."

This grounds for relief is without merit because Caldwell's defense counsel, in fact, did present and argue for a justification defense, and the denial of such by the undersigned was the subject of Caldwell's appeal to the United States Court of Appeals for the Fifth Circuit. See *United States v. Caldwell,* No. 06-31038, 5th Cir. 2007. Thus, because this claim was presented and decided on direct appeal, it cannot be re-litigated under 28 U.S.C. § 2255, except under circumstances which are not present in this case. *Withrow v. Williams,* 507 U.S. 680 (1993); *Kastenbaum v. United States,* 588 F.2d 138 (5th Cir. 1979).

Nonetheless, it is worth noting that this Court spent a considerable amount of time hearing argument on the justification defense and its inclusion in the jury instructions. See Rec. Doc. #120, pp. 158-171. Thus, the record is replete with argument and discussion of this issue, clearly demonstrating that Caldwell's counsel vigorously argued precisely the point Caldwell makes herein. Rather than exhaustively discuss the issue once again, the Court simply incorporates by reference

the previously-referenced transcript in the record, as well as the previously-cited opinion from the Fifth Circuit Court of Appeals.

    **C.**     **Ground Two: Counsel's Alleged Denial and Interference with Caldwell's Right to Testify**

In this assignment, Caldwell claims that his attorney "denied, interfered with, and overrode Caldwell's Sixth Amendment right to take the stand and testify in and on his own behalf. Had counsel respected and conceded to Caldwell's decision to and right to take the stand and testify on and in his own behalf, there is a reasonable probability that the result of the underlying trial would have been different." To assert this claim successfully, Caldwell must overcome a strong presumption that counsel's decision not to place him on the stand was sound trial strategy. *Sayre v. Anderson,* 238 F.3d 631 (5th Cir. 2001).

Caldwell does not state what testimony he would have offered that might have caused the jury to view the case differently. Because the very fact of the stabbing was uncontroverted, and Caldwell's defense surrounded not a denial of the act, but justification for it, the Court can only assume that Caldwell's testimony would have sought to explain either how the stabbing was justified, or that he acted in self defense. Given that the victim and other witnesses testified as to the events leading up to the stabbing, Caldwell's testimony would have essentially contributed nothing but an unsubstantiated version or description of events that day, as compared to the testimony of others who did testify at trial. Thus, merely contradictory[13] testimony from Caldwell is not sufficient to support the relief Caldwell seeks herein. See *United States v. Willis,* 273 F.3d

---

[13]It is not at all clear that Caldwell's testimony would even be "contradictory", in that Catana's behavior was described to the jury.

6

592 (5th Cir. 2001); *Rega v. United States,* 263 F.3d 18 (2d Cir. 2001).

Moreover, advising a defendant not to testify and to maintain his Fifth Amendment right is not only a common strategic decision for criminal defendants and their attorneys, but is quite the usual practice of defense counsel to give such advice. Counsel's weighing of the benefits of the defendant's testimony versus the risk of the defendant subjecting himself to rigorous cross examination, including impeachment or 404(b) evidence, is a careful judgment call which cannot be second guessed post-trial. See, *e.g., United States v. Martinez,* 181 F.3d 627 (5th Cir. 1999). Caldwell has not demonstrated that he or anyone else on his behalf directly overrode his right to take the stand and testify; he not once voiced his disapproval or disagreement to the Court regarding this decision; and does not demonstrate what testimony he could offer that would have made any difference whatsoever, other than conclusorily stating that "there is a reasonable probability that the result of the underlying trial would have been different." See Caldwell's "Motion Under 28 U.S.C. § 2255", p. 6. Again, assuming Caldwell's testimony would have been offered to support justification or self defense, it should be noted that Mr. Catana's aggressive and inappropriate comments and behavior towards Caldwell were all brought out by defense counsel's skillful questioning of other witnesses at trial. Thus, the jury was fully aware of the events leading up to Caldwell's action in stabbing Catana. Caldwell's recounting of those events, which were largely uncontradicted and supported by independent witnesses, would have had no significant impact on the jury's appreciation of Caldwell's situation leading up to and at the time of the stabbing.

Because Caldwell has failed to establish that his counsel's conduct fell below the standard set forth in *Strickland*, and that relief is warranted based upon a decision that he not testify at trial, this argument is without merit.

> **D.    Ground Three: Counsel's Alleged Failure to Move for a Downward Departure at Sentencing**

In this claim, Caldwell maintains that he was entitled to a downward departure at sentencing, for the following grounds: "(1) a downward departure for aberrant behavior; (2) a downward departure for the conduct of the underlying victim; and (3) a downward departure for Caldwell's acceptance of responsibility by admitting to the stabbing of the victim, notwithstanding substantive defenses of justification."

This grounds for relief is also without merit. First, Caldwell's attorney made objections to the presentence report and indeed filed a motion for downward departure.[14] These actions were based on two arguments offered at sentencing: (1) that Caldwell's criminal history had been over-represented in the guideline calculation; and (2) that the aggressive behavior of the victim, Gheorghe Catana, should also be taken into consideration. It should be noted that Caldwell's criminal history category, for guideline purposes, was V, and thus his sentence would typically be calculated near the upper end of the guideline range, which was set at 84 to 105 months. Thus, the undersigned factored in the grounds for these two objections in sentencing Caldwell to 90 months (instead of over 100 months).

---

[14]Caldwell's attorney also filed a Sentencing Memorandum under seal.

With regard to Caldwell's claim that counsel should have sought, and he should have received, a downward departure for "aberrant behavior", § 5K2.20(b) sets forth the requirements that (1) the conduct committed was without significant planning, (2) was limited in duration, and (3) represents a marked deviation by the defendant from an otherwise law-abiding life. This grounds for departure is inapplicable because of Caldwell's failure to satisfy requirement number 3 of the PSR, which calculated a criminal history category of V, setting forth other instances in which Caldwell committed violent acts. See Presentence Report ¶¶ 35 (resisting an officer with violence), and 44 (battery wherein Caldwell kicked in the door of a residence and struck the female occupant on the head with his fist, pushed her onto the floor, and threatened to kill her with a knife). Thus, had counsel argued for a departure on the basis of "aberrant behavior", it would clearly have been overruled.

Next, Caldwell claims his counsel should have sought and he should have received a downward departure for the conduct of the victim, pursuant to U.S.S.G. § 5K2.10. In fact, his counsel indeed sought a downward departure based on the conduct of the victim, Gheorghe Catana, and such departure was addressed by the Court at the time of sentencing. See Rec. Doc. #109, pp. 19-21. The Court considered the principles set forth in *United States v. Harris,* 293 F.3d 863 (5th Cir. 2002). This ground for downward departure was found to be without merit at the time of sentencing, and is without merit here.

Third, Caldwell asserts that his counsel should have argued for a downward departure for his acceptance of responsibility. In so arguing, Caldwell asserts that his admission that he indeed stabbed Mr. Catana constitutes an acceptance of responsibility, despite assertion of a justification

defense. For a departure based upon acceptance of responsibility under § 3E1.1, Caldwell must fall within the exceptions set forth in Application Note 2 to § 3E1.1:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g. to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.[15]

Caldwell does not qualify for this departure, having shown no remorse for inflicting a potentially deadly injury on a fellow shipmate, forcing the government to go to trial twice and then appealing his conviction, all the while insisting that his actions were reasonable and justifiable under the circumstances, despite the jury's finding and the comments from the Court. Caldwell does not qualify for acceptance of responsibility benefits simply by admitting that he did, in fact, grab a knife and thrust it into Mr. Catana's body. Indeed, those facts were clearly established at trial and were uncontroverted.

### E. Evidentiary Hearing

To the extent that Caldwell seeks an evidentiary hearing on these assignments of ineffective assistance of counsel, the Court determines, for the reasons stated herein, that there is no need for an evidentiary hearing, and thus any such request is **DENIED**.

---

[15]U.S.S.G. 3E1.1., commentary n. 2.

## IV. **CONCLUSION**

For the reasons stated herein, the Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, filed herein by Israel Caldwell is **DENIED**.

New Orleans, Louisiana, this 14th day of July, 2009.

　　　　　　　　　　　　　　　　　**KURT D. ENGELHARDT**
　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**